UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD LEATON and KAREN
LEATON,

   Plaintiffs,

v.              Case No. 2:19-cv-425-JLB-MRM

FLIK INTERNATIONAL CORP., d/b/a
FLIK HOSPITALITY GROUP AT HERTZ,

   Defendant.

_____

## ORDER

   Defendant Flik International Corp., d/b/a Flik Hospitality Group at Hertz ("Flik"), moves for summary judgment.  (Doc. 46.)  After careful review of the record, the parties' briefs, and viewing the facts in the light most favorable to Plaintiffs Richard and Karen Leaton, Flik's motion for summary judgment is granted.

## BACKGROUND

   This lawsuit arises from a slip-and-fall accident at the corporate headquarters of the Hertz Corporation ("Hertz") in Estero, Florida.  On April 3, 2016, Plaintiff Richard Leaton—a Hertz employee—exited a conference room and was heading down the corridor toward the elevators when he passed a food station on his left.  (Doc. 46-4 at 102:7–12.)  He did not stop at the food station but instead walked directly by it.  (Id. at 102:13–16.)[1]  Mr. Leaton testified that he slipped and

_____

[1] Another employee who was interviewed for the Hertz incident report said that he saw Mr. Leaton at the food station before he slipped and fell.  (See Doc. 46-6

fell in front of the food station after he had walked about five to seven steps out of the conference room. (Id. at 102:25–103:3.)

Mr. Leaton did not notice any liquid on the floor prior to his fall, but he noticed a wet spot on the back of his pants afterwards. (Id. at 99:24–100:6, 104:13–24.) He does not know what the liquid was or how it got there, and he does not know how long the liquid was on the ground. He believes, however, that he slipped on water that came from a drink dispenser, which was sitting on the edge of the food service table at the time. (Doc. 46-4 at 106:14–22.) In a Hertz incident report, Robert Leverenz—Hertz's Corporate Security manager—states that he inspected the scene of the accident and did "not notice any contributing factors or items on the ground area where Mr. Leaton fell." (Doc. 46-6 at 2.) Mr. Leverenz also states that a short time after Mr. Leaton's fall, cleaning personnel "responded to the scene with a mop and did not witness any liquid spillage on the ground as no corrective action was taken." Id. However, a photograph of the scene shows that a yellow floor sign with the warning "caution—wet floor" had been placed in front of the food station after Mr. Leaton fell. (Doc. 46-4 at 99:16–19; Doc. 46-7.)

Mr. Leverenz states that upon arriving at the scene, he observed Mr. Leaton lying on the floor with his head propped up on a backpack. (Doc. 46-6 at 2.) Mr. Leaton was conscious, and he told Mr. Leverenz that "one leg went one way and

---

at 2.) The witness's account conflicts with Mr. Leaton's testimony concerning whether Mr. Leaton stopped at the food station before falling. Mr. Leaton argues the incident report is inadmissible hearsay. The Court need not address that argument, however, as it is unnecessary to rely on the incident report to determine that Flik is entitled to summary judgment in its favor.

his other leg went the other way and he ended up on the floor." Id.  Emergency personnel were called, and Mr. Leaton was transported to the hospital.

Mr. Leaton brought this lawsuit in May 2019, alleging a single count of negligence.[2]  Mr. Leaton has not sued Hertz, which is both his employer and the owner of the premises where the accident occurred.  Instead, he has sued Flik, the operator of the self-service food station located in the hallway of Hertz's headquarters.  Under its Food Services Agreement with Hertz, Flik provides certain food and beverage services and sales at Hertz's Estero headquarters.  Included in those services is a food catering station that Flik employee Prescilia "Lia" Fnu sets up five days a week in the hallway where Mr. Leaton fell.  (Doc. 46-1; Doc. 46-3 at 8.)  Ms. Fnu testified that she sets up the catering station and then leaves; she returns between one and four hours later to clean up the station.  (Doc. 46-3 at 26–27.)  The food catering station includes a water dispenser with a pull spout, along with other drinks, such as self-service coffee and iced tea dispensers.

Ms. Fnu testified that she always places the water dispenser against the back wall away from the edge of the counter when she sets up the catering station.  (Id. at 14–15.)  Flik's corporate representative, Krystine Russo, testified that Flik trained its employees to set water dispenser back from the edge of the food station, but not all the way back against the wall.  (Doc. 48-1 at 12:10–21, 35:5–36:11.)

---

[2] Mr. Leaton's wife, Karen Leaton, brings a separate claim for loss of consortium.  Because that claim is entirely derivative of Mr. Leaton's negligence claim, the Court's ruling on the negligence claim also resolves Mrs. Leaton's loss of consortium claim.  See, e.g., Faulkner v. Allstate Ins. Co., 367 So. 2d 214, 217 (Fla. 1979) (citation omitted).

Mr. Leaton testified, however, that the water dispenser was located close to the edge of the table at the time of his accident.  (Doc. 46-4 at 98.)[3]  A photograph taken of the scene approximately an hour after Mr. Leaton fell shows a water dispenser at the edge of the food station countertop.  (Doc. 46-7.)[4]

## SUMMARY JUDGMENT STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008) (per curiam).  To meet that burden, the moving party must point to specific evidence in the record—including depositions,

---

[3] Mr. Leaton asserts that "[t]here is a disagreement between Flik's corporate representative and its employee as to the placement of the water dispensers at the catering tables."  (Doc. 48 at 5.)  The discrepancies in their testimony, however, are minor and immaterial to the circumstances at issue here.  Both witnesses testified that Flik's policy is to place the water dispenser toward the back of the catering table.  Their testimony varied only as to how far back it was supposed to be placed, as well as the reasoning behind that policy.  Ms. Fnu testified that the water dispenser was placed at the very back of the table for convenience, so that a person could fill up his water cup by placing it on the table underneath the waterspout and then use one hand to operate the dispenser spout while possibly carrying something in the other hand.  (Doc. 46-3 at 14:24–16:3.)  Ms. Russo, though, testified that the corporate policy was to place the water dispenser back from the edge of the counter, but not all the way back, for aesthetic reasons.  (Doc. 48-1 at 35:5–36:11.)

[4] Mr. Leaton has also submitted an additional fifteen photographs purportedly taken of the same food station at various points in time between June 2018 and June 2019, all of which show the water dispenser at the edge of the counter with the pour spout hanging over the edge of the table.  Flik objects to the admissibility of these photographs.  The Court need not address that evidentiary objection because, even with the photographs in evidence, the Court determines that Flik is entitled to summary judgment in its favor.

documents, affidavits, or declarations—to demonstrate the absence of a genuine dispute regarding the material facts.  Fed. R. Civ. P. 56(c).  Once the moving party has met its burden, the non-moving party must demonstrate that a genuine dispute exists as to "each essential element of the case for which he has the burden of proof."  Ray v. Equifax Info. Servs., LLC, 327 F. App'x 819, 825 (11th Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  "[T]he nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  Ray, 327 F. App'x at 825 (quoting Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586, (1986)).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In resolving issues under Rule 56(c), the court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor.  See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).  "[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied."  Carlin Commc'n, Inc. v. So. Bell Tel. & Tel. Co., 802 F.2d 1352, 1356 (11th Cir. 1986) (citing Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1299 (11th Cir. 1983)).

## **DISCUSSION**

Flik argues it is entitled to summary judgment because there is no evidence that any water was spilled on the floor by a Flik employee.  Flik asserts that Mr.

Leaton's testimony that he slipped on water dripped from the drink dispenser on Flik's catering station is based on speculation rather than personal knowledge, and there is no record evidence to support either of those facts beyond Mr. Leaton's speculative testimony.  In addition, Flik contends that it cannot be held liable based on the mere existence of water on the floor because it did not control the area in which Mr. Leaton fell, and even if it did, there is no evidence it had either actual or constructive knowledge of the water spill that Mr. Leaton thinks caused his fall.

Mr. Leaton responds by asserting that he knows he slipped on water on the floor because he noticed a wet spot on his pants after the fall.  Further, he argues that a jury could reasonably infer that the water came from Flik's nearby water dispenser.  Mr. Leaton asserts that he does not need to show Flik's actual or constructive knowledge of the water spill because Flik is responsible for having created that dangerous condition.  A reasonable jury could find Flik was responsible for that condition because Flik's employee, Ms. Fnu, placed a self-service water dispenser near the edge of the service counter without placing a mat on the floor underneath the waterspout to catch spills.  Relying on the series of photographs taken of the food station in the months following the accident, all showing the water dispenser at the edge of the table, Mr. Leaton argues that Flik breached its general duty of care to others by conducting business in a manner that created a foreseeably dangerous situation for people walking by Flik's food catering station.

The Court addresses these arguments as follows:  First, the Court will discuss the applicability of a premises-liability theory of negligence to Flik's conduct

at issue in this case.  Second, the Court will discuss Mr. Leaton's argument that Flik is liable under a general theory of negligence rather than a premises liability theory.  And third, the Court will discuss whether the evidence is sufficient under either theory of liability to support a jury verdict in Mr. Leaton's favor on the issue of proximate causation.

### A.   __Premises Liability__

A negligence claim under Florida law[5] has four elements: "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff."  Encarnacion v. Lifemark Hosps. of Fla., 211 So. 3d 275, 277–78 (Fla. 3d DCA 2017) (internal citation and quotation omitted).

As to the duty element, Florida law prescribes that "'[t]he duty of the landowner to a business invitee is to maintain the premises in a reasonably safe condition and to warn the invitee of latent perils which are known or should be known to the owner but which are not known to the invitee or which, by the exercise of due care could not be known to him.'"  Wilson-Greene v. City of Miami, 208 So. 3d 1271, 1274 (Fla. 3d DCA 2017) (quoting Storr v. Proctor, 490 So. 2d 135, 136 (Fla. 3d DCA 1986)).  The duty of, as here, a vendor contracted to provide services on another's business premises "turns on a slightly different point, its contractually

---

[5] Because the Court has diversity jurisdiction over this matter (Doc. 1 at 3-5), it applies the substantive law of Florida.  See Palavicini v. Wal-Mart Stores E., LP, 787 F. App'x 1007, 1010 n.1 (11th Cir. 2019) ("A federal court sitting in diversity applies the substantive law of the state in which the case arose." (citing Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1132–33 (11th Cir. 2010))).

assumed obligations." <u>Encarnacion</u>, 211 So. 3d at 278 (citing <u>Wilson-Greene</u>, 208 So. 3d at 1273.  That is, "[w]here a contract exists, 'a defendant's liability extends to persons foreseeably injured by his failure to use reasonable care in performance of a contractual promise.'" <u>Wilson-Greene</u>, 208 So. at 1274 (citing <u>Md. Maint. Serv., Inc. v. Palmieri</u>, 559 So. 2d 74, 76 (Fla. 3d DCA 1990).

Turning to the breach element, under Florida statutory law, "where a business invitee slips and falls on a 'transitory substance' in a business establishment . . . proof of the breach element of the claim against an owner of the establishment is statutorily constrained by section 768.0755 of the Florida Statutes." <u>Encarnacion</u>, 211 So. 3d at 278.  Specifically, Florida Statute § 768.0755 requires the following in relevant part:

> (1)    If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment <u>had actual or constructive knowledge</u> of the dangerous condition and should have taken action to remedy it.  Constructive knowledge may be proven by circumstantial evidence showing that:
>
> > (a)    The dangerous condition existed for such a length of time that, <u>in the exercise of ordinary care</u>, the business establishment should have known of the condition; <u>or</u>
> >
> > (b)    <u>The condition occurred with regularity and was therefore foreseeable</u>.
>
> (2)    This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.

Fla. Stat. § 768.0755 (2015).  In all events, Florida courts have held that section 768.0755(1) "does not create any new element of a cause of action for

negligence." Kenz v. Miami-Dade Cnty., 116 So. 3d 461, 464 (Fla. 3d DCA 2013). Instead, it merely "codifies a means and method by which a plaintiff shows that the defendant-business establishment has breached its duty of care." Id. (citing Delgado v. Laundromax, Inc., 65 So. 3d 1087, 1089 n.1 (Fla. 3d DCA 2011)).

### 1.   Applicability of Fla. Stat. § 768.0755

As an initial matter, Mr. Leaton argues that section 768.0755 does not apply because his negligence claim against Flik is not a claim for premises liability.  (Doc. 48 at 9 ("The premises where the fall occurred was not Flik's premises, therefore, actual and constructive knowledge is not required as Plaintiff's burden of proof.").)

Although it is true that the business premises at which Mr. Leaton's accident occurred is owned by Hertz (not Flik), Florida courts have explained that premises liability is predicated on "the ability to control access or exclude others from the property," not ownership of the property.  Bechtel Corp. v. Batchelor, 250 So. 3d 187, 196 (Fla. 3d DCA 2018).  It is undisputed that Flik contracted with Hertz to provide food and beverage services on Hertz's business premises.  See Bechtel Corp., 250 So. 3d at 196; Wilson-Greene, 208 So. at 1273.  Thus, the relevant question for purposes of section 768.0755 is whether Flik had "the ability to control access to or exclude others from" the premises where the accident occurred.

It is undisputed that Flik's activities on the premises were conducted as an independent contractor of Hertz.  While Flik conducted activities on the premises under the Foods Services Agreement, Hertz maintained possession and control over the premises.  Thus, neither party argues that Flik had possession and control over

the premises.[6]  Nevertheless, Flik argues that even though it did not have possession and control over the premises, the Court should nevertheless determine the duty of care it owed to Mr. Leaton and whether it breached that duty under the same principles that would apply to a person in possession and control over the premises.  The Court agrees with Flik.

The Court finds the Restatement (Second) of Torts, section 383, entitled "Liability of Persons Acting on Behalf of Possessor," instructive.  Section 383 states:

> One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside the land as though he were the possessor of the land.

The Supreme Court of Florida has applied section 384 of the Restatement (Second) of Torts, which is substantially similar to section 383, but pertain to physical structures erected by third parties.  See Cockerham v. R. E. Vaughan, Inc., 82 So. 2d 890, 892 (Fla. 1955).  Specifically, Cockerham involved a precast concrete window frame, which fell on a minor while he was playing near a home under construction.  Id. at 890.  The subcontractor who had placed the window frame on the property argued that he owed no duty to the minor because he did not have control over the premises.  Id.  Citing to the Restatement, the Supreme Court of Florida rejected that argument, holding that "[t]he liability of the [subcontractor]

---

[6] Specifically, Mr. Leaton states that he agrees with Flik that Flik did not have possession or control over Hertz's headquarters.  (See Doc. 48 at 17.)  Mr. Leaton makes a separate argument, however, concerning Flik's purported control over the catering station (as opposed to the premises) pursuant to the Food Services Agreement.  That argument is addressed infra in Section C.1.

for the artificial condition created by him upon the land of another while the work remained in his charge was exactly co-extensive with that of the possessor of the land." <u>Id.</u> at 892.

Similar to <u>Cockerham</u>, under section 383, Flik "is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby" to Mr. Leaton, "as though [Flik] were [Hertz]." Because Hertz's liability for physical harm to Mr. Leaton would turn on the requirements of section 768.0755, Flik's liability to Mr. Leaton for that harm turns on those same requirements. The Court will now discuss those requirements in turn.

### 2.    <u>Actual Notice</u>

As previously noted, to find a breach of a duty owed to a business invitee, section 768.0755 requires proof of either actual or constructive knowledge of the condition that caused injury to the business invitee. Mr. Leaton argues that the record contains evidence of Flik's "actual knowledge" of the dangerous condition sufficient to avoid summary judgment. (<u>See</u> Doc. 48 at 11.)

"Actual knowledge of a dangerous condition exists when a business owner's employees or agents know of or create the dangerous condition." <u>Palavicini</u>, 787 F. App'x at 1010 (citing <u>Barbour v. Brinker Fla., Inc.</u>, 801 So. 2d 953, 957 (Fla. 5th DCA 2001)). There is no evidence that Ms. Fnu or any other Flik employee actually knew about the water spill on which Mr. Leaton purportedly slipped and fell. Thus, there is no evidence that Flik is liable on the theory that Flik (<u>i.e.</u>, Flik's employee) had actual notice of the dangerous situation without correcting it. <u>See id.</u>

If Flik's employee created the dangerous condition, however, Flik's lack of knowledge about it is irrelevant.  An employee's conduct is imputed to the employer, and an employer who, through its employee, creates a dangerous condition "already has breached the duty to use reasonable care in maintaining the property in a reasonably safe condition."  Wolford v. Ostenbridge, 861 So. 2d 455, 456 (Fla. 2d DCA 2003).  There is no evidence in the record, however, that would support a jury finding that Ms. Fnu (or any other Flik employee) spilled the water on which Mr. Leaton purportedly slipped and fell.  Thus, there is no evidence that Flik is liable on the theory that it (i.e., its employee) created the dangerous condition.

Nevertheless, according to Mr. Leaton, a reasonable jury could find that Flik created "the dangerous condition" because Flik "admits that it knew water could get on a floor with the spout of the dispenser hanging over the edge or by user error" and yet failed to take any preventive action.  (Doc. 48 at 11.)

Without expressly saying so, Mr. Leaton seems to suggest that the "dangerous condition" Flik "created" was the water dispenser itself, rather than the water spill on which Mr. Leaton slipped.  But Mr. Leaton was not injured by the water dispenser; he was injured by slipping on water that apparently spilled onto the floor.  Thus, the dangerous condition of which section 768.0755 speaks was the water spill on the floor.  See, e.g., Owens v. Publix Supermarkets, Inc., 802 So. 2d 315, 330 (Fla. 2001) ("The existence of a transitory foreign substance on the floor is not a safe condition."); Palavicini, 787 F. App'x at 1011 (question of actual notice

turned on whether there was evidence the defendant knew that an air conditioner unit had leaked water onto the floor).

Mr. Leaton's argument that Flik "created" the dangerous condition through its "actual knowledge" of the possibility that water might spill on the floor is really another way of saying Flik breached its duty of care to Mr. Leaton by the method or mode by which it operated its food catering station.  That, Mr. Leaton contends, could foreseeably lead to the type of accident that occurred here.  Mr. Leaton's "mode of operation" theory of liability is addressed in Section B, <u>infra</u>.  Knowledge of a mode of operation that might create a foreseeable risk, however, is not equivalent to actual knowledge of the existence of the liquid, and therefore that knowledge does not satisfy the "actual knowledge" requirement of section § 768.0755(1).

### 3.   <u>Constructive Notice</u>

To establish constructive notice of a dangerous condition under Florida Statute § 768.0755(1), the record must contain evidence demonstrating either (a) that the water spill existed for such a length of time that, in the exercise of ordinary care, Flik should have known about the spill; or (b) water spills from the water dispenser on the food catering station occurred with regularity and therefore were foreseeable.  <u>See</u> Fla. Stat. § 768.0755(1).  The Court finds that the record is devoid of such evidence, and Mr. Leaton does not argue otherwise.  Applying section 768.0755(1), the Court concludes that, even viewing the facts in the light most favorable to Mr. Leaton, he has shown neither actual nor constructive notice of the dangerous condition.  As a result, the Court finds that Flik is entitled to summary judgment on Mr. Leaton's premises liability negligence claim against it.

## B.   <u>Mode of Operation Theory of Liability</u>

Mr. Leaton attempts to avoid the requirements of section 768.0755(1) by alleging a negligence claim based on a "mode of operation" theory of liability.  That theory is articulated (though not expressly labeled) in the Amended Complaint as follows: Leaton alleges that Flik "negligently set up the catering station so that the water dispenser was placed at the edge of the catering table" with the waterspout hanging "over the floor."  (Doc. 22 at ¶ 8.)  Further, there was no "mat on the floor in front of the catering table to catch water from the dispenser spout and/or condensation from the dispenser and/or user error of the dispenser and/or leaks from the dispenser."  (<u>Id.</u> at ¶ 9.)  Flik allegedly "had a duty to maintain the catering station in a reasonably safe condition for the safety of persons on the premises which includes reasonable efforts to keep the catering station free from water on the floor that might foreseeably give rise to loss, injury, or damage."  (<u>Id.</u> at ¶ 16.)  Thus, Flik allegedly "acted negligently by failing to exercise reasonable care in the maintenance, inspection, repair, warning, or mode of operation of the catering station."  (<u>Id.</u> at ¶ 18.)

In <u>Owens</u>, 802 So. 2d at 323, the Supreme Court of Florida concluded that "modern-day supermarkets, self-service marts, cafeterias, fast-food restaurants and other business premises should be aware of the potentially hazardous conditions that arise from the way in which they conduct their business."  Accordingly, the court held that

> [i]f the evidence establishes a specific negligent mode of operation such that the premises owner could reasonably anticipate that dangerous

> conditions would arise as a result of its mode of operation, then whether the owner had actual or constructive knowledge of the specific transitory foreign substance is not an issue.  The dispositive issue is whether the specific method of operation was negligent and whether the accident occurred as a result of that negligence.

Id. at 332; see also Schaap v. Publix Supermarkets, Inc., 579 So. 2d 831, 834 (Fla. 1st DCA 1991).

But "in 2010, the Legislature enacted section 768.0755, which required a slip-and-fall plaintiff to prove that the defendant had actual or constructive knowledge of the foreign substance."  Norman v. DCI Biologicals Dunedin, LLC, 301 So. 3d 425, 429 (Fla. 2d DCA 2020).  Following the enactment of section 768.0755, the negligent mode of operation theory of liability adopted in Owens is no longer good law.  See Woodman v. Bravo Brio Rest. Grp., Inc., No. 6:14-cv-2025-ORL-40, 2015 WL 1836941, at *2 (M.D. Fla. Apr. 21, 2015) (noting that Fla. Stat. § 768.0710 adopted Owens's holding on mode of operation theory, but further explaining that section 768.0710 was repealed with the passage of section 768.0755); cf. Glaze v. Worley, 157 So. 3d 552, 556 (Fla. 1st DCA 2015) (allowing negligent-mode-of-operation claim to go forward after concluding that section 768.0755 could not be applied retroactively)

Because section 768.0755 controls Flik's liability, and that statute eliminated the negligent mode of operation theory of liability, Mr. Leaton cannot maintain a cause of action against Flik based on the allegations of negligent mode of operation as pleaded in the Amended Complaint.

### C.     General Negligence Liability

Alternatively, and in an abundance of caution, even if the Court assumed

that the principles of a premises-liability theory of negligence (including section

768.0755) did not apply to evaluating Mr. Leaton's negligence claim against Flik,

Mr. Leaton would still be required to show evidence of the elements of a general

negligence action, including the existence of a duty and breach.  The Court will

address those elements in the general negligence context as an alternative and

independent basis for its decision granting summary judgment in favor of Flik.

### 1.     Breach of contractual duty of care

As already discussed in the context of section 768.0755, Mr. Leaton argues

that the Food Services Agreement imposes a duty of care on Flik that could be

actionable under a negligence theory.  Indeed, a defendant may owe a duty of care

to a plaintiff based on its "contractually assumed obligations" to a third

party.  Encarnacion, 211 So. 3d at 279; Wilson-Greene, 208 So. 3d at 1274.

According to Mr. Leaton, under the Food Services Agreement, "Flik had the

control, duty, and responsibility of the catering stations."  (Doc. 48 at 17.)  It is true

that the Agreement gives Flik the exclusive right to provide food services on the

premises and in its interior facilities.  (See Doc. 46-1 at ¶¶ 2.1, 3.1.)  But these

provisions of the Food Services Agreement do not give Flik exclusive possession or

control over any part of the premises, including those portions on which Flik

16

provided the food services.[7]  Therefore, Flik's duty of care (assuming the Restatement (Second) of Torts § 383 does not apply) was not the duty owed by a person in possession or control over the premises.

Mr. Leaton also cites provisions of the Foods Services Agreement that purportedly impose on Flik "control, duty, and responsibility" for "[t]he housekeeping and sanitation of the catering station."  (Doc. 48 at 17.)  The Food Services Agreement provides that Flik was responsible for "daily . . . [c]leaning [of] floors . . . used by FLIK in food storage and preparation areas."  (Doc. 46-1 at ¶ 2.2.2).)  In addition, the Food Services Agreement recites that "[s]ervice and [p]roduction [a]reas and [e]quipment should be kept free of spillages at all times and maintained throughout the service to the required standard of food service."  (Id. at 12.)  In contrast to these cleaning duties owed by Flik, the Food Services Agreement also provides that Hertz has the responsibility to service and maintain the premises "in a safe operating condition."  (Id. at ¶ 3.5.2).)

In Wilson-Greene, 208 So. 3d at 1274, the plaintiff argued that the defendant's maintenance contractor breached its duty of care to business invitees

---

[7] (See Doc. 46-1 at ¶ 2.6) ("Client [Hertz] may inspect the Services, without notice, on any business day at any time Client in its sole discretion may deem desirable."); (id. at ¶ 2.1) ("The grant of rights [to Flik by this Agreement] shall not . . . prevent or restrict Client [Hertz] from engaging other parties or providers for certain catering and special events on an ad hoc basis[.]"); (id. at ¶ 3.2) (". . . Client's [Hertz's] use of the dining and service areas for Client's purposes is subject to Section 2.1, above"); (id. at ¶ 4.4) ("FLIK shall provide to Client [Hertz] . . . access at all reasonable times to the Premises or any part thereof at which FLIK is providing the Services . . . for the purpose of: . . . (d) examining FLIK's performance of the Services and conformity to the terms of this Agreement.").

based on language in the maintenance contract that the defendant was to "pay close attention to the . . . lobby area" and also "police [the] area and rearrange furniture on a daily basis." The court stated, however, that the plaintiff "read[ ] more into the contract than the contract language can bear," and held that the language "did not create a contractual duty on [defendant] constantly to patrol the building." Id.

The court reached a similar result in Encarnacion. See 211 So. 3d at 279 (holding that a hospital's contract cleaning company could not be held liable in negligence for a slip and fall on the hospital's premises because the cleaning specifications by which the cleaning company had contracted to provide cleaning services did not impose a duty on the cleaning services company "to constantly patrol or supervise the area where the accident occurred" (emphasis added)).

This Court concludes that neither the requirement that Flik clean the floor area in which it provided food services on a daily basis nor the requirement that Flik keep the service area free of spillages can be read as imposing a heightened duty on Flik to constantly monitor the area to maintain a clean floor.

Moreover, even if the Food Services Agreement could be read to impose a duty to keep the floor clean, that duty would not entail "keep[ing] a large force of moppers to mop up [water] as fast is it falls or blows in." Donnelly v. Wal-mart Stores E. LP, No. 2:19-CV-14112, 2020 WL 704907, at *3 (S.D. Fla. Feb. 12, 2020) (citation omitted), aff'd, 844 F. App'x 164 (11th Cir. 2021). Rather, to show a breach of that duty, Mr. Leaton would have to present evidence of either actual or constructive notice of the water spill on which Mr. Leaton slipped and fell. See, e.g.,

<u>Glaze</u>, 157 So. 3d at 559 (Makar, J., concurring and specially concurring).  And, as Mr. Leaton admits, the record contains no evidence to support actual or constructive notice.

### 2.   <u>Duty based on the general facts of the case</u>

Other than contractual duties, Florida law recognizes four sources of duty for a general negligence claim.  They include: "(1) statutes or regulations; (2) common law interpretations of those statutes or regulations; (3) other sources in the common law; and (4) the general facts of the case."  <u>Limones v. Sch. Dist. of Lee Cnty.</u>, 161 So. 3d 384, 389 (Fla. 2015) (citing <u>McCain v. Fla. Power Corp.</u>, 593 So. 2d 500, 503 n.2 (Fla. 1992)).  Mr. Leaton cites to the general facts of the case as the source of Flik's duty of care.

Whether a duty exists based on the general facts of the case depends on "whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others."  <u>McCain</u>, 593 So. 2d at 502 (citation omitted).  "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses."  <u>Id.</u> (quoting <u>Kaisner v. Kolb</u>, 543 So. 2d 732, 735 (Fla. 1989)).

The question of foreseeability is relevant both to the element of duty (the existence of which is a question of law) and the element of proximate causation (the existence of which is a question of fact).  <u>Id.</u> at 502.  In <u>McCain</u>, the Supreme Court of Florida observed that there is a "temptation . . . to merge the two elements into a

single hybrid 'foreseeability' analysis, or to otherwise blur the distinctions between them." Id. That is what Mr. Leaton does here. (See Doc. 48 at 10–11.) This approach is "incorrect," however, because "foreseeability relates to duty and proximate causation in different ways and to different ends." McCain, 593 So. 2d at 502. As mentioned earlier, "[t]he duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." Id. at 502. This is different from foreseeability in the proximate causation context, which "is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." Id. "In other words, the former is a minimal threshold legal requirement for opening the courthouse doors, whereas the latter is part of the much more specific factual requirement that must be proved to win the case once the courthouse doors are open." Id. at 502–03 (internal footnote omitted).

In considering the threshold legal requirement of foreseeability in finding the existence of a duty, the Supreme Court of Florida has noted that "[t]he statute books and case law . . . are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a duty of care." Id. at 503. "Rather, each defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result." Id. Thus, "trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant." Id.

Here, Mr. Leaton argues that Flik created a foreseeable zone of risk by failing to place a floor mat on the ground below the counter where the water dispenser either was placed or moved by third parties so that its spout hung over the edge of the counter.  The only cases cited by Mr. Leaton in support of this theory are McCain and Sturgill v. Lucas, 292 So. 3d 462 (Fla. 2d DCA 2020).  In McCain, the court had no trouble concluding that a legal duty existed because, "by its very nature, power-generating equipment creates a zone of risk that encompasses all persons who foreseeably may come in contact with that equipment."  593 So. 2d at 504.  Here, however, the duty question is not so easy.  A self-service water dispenser does not create the type of obvious risk that power-generating equipment creates.

In Sturgill, the court observed—while discussing a different case—that a party's "failure to safely secure cargo" creates a "McCain-type 'zone of risk' wherein a highway mishap of some description might well take place."  292 So. 3d at 466 (quoting Kowkabany v. Home Depot, Inc., 606 So. 2d 716, 721 (Fla. 1st DCA 1992)).  But again, cargo that is not safely secured presents a more obvious risk of harm to others than a self-service water dispenser placed on a table.

Flik's act of placing the water dispenser on the table does not itself create any risk.  Instead, the risk arises out of Flik's placement of the water dispenser on the table combined with the actions of users of the water dispenser who carelessly allow water to drip onto the floor when filling their cups.  In contrast, the risk created by a person who improperly secures cargo is more direct—the defendant's improper

21

securing of the cargo itself creates the risk, rather than the risk being created by otherwise innocuous conduct followed by the action of others.

That the harm ultimately flows from the conduct of third-party users of the water dispenser does not automatically preclude a finding of a duty of care. But, under traditional negligence principles, "there is there is [generally] no duty to control the conduct of a third person to prevent [that person] from causing physical harm to another." Knight v. Merhige, 133 So. 3d 1140, 1145 (Fla. 4th DCA 2014) (quoting Carney v. Gambel, 751 So. 2d 653, 654 (Fla. 4th DCA 1999)).

Even if the Court were to find Flik owed Mr. Leaton a duty of care under a general negligence theory based on a foreseeable zone of risk created by not placing a floor mat under the cooler,[8] the Court finds that the record fails to reveal a genuine issue of material fact as to whether Flik breached that duty.

Mr. Leaton seeks to prove a breach of that duty with evidence of a mode of operation, i.e., that the risk posed by Flik's mode of operating the food station was foreseeable. Regardless of whether Mr. Leaton labels his claim as one based on common law negligence or premises liability, he would still have to use the "negligent mode of operation" method to establish a breach of a duty. Using that method would violate the plain text of section 768.0755. Woodman, 2015 WL 1836941, at *3; see also Sanchez v. ERMC of Am., LLC, 2:16-cv-851-FtM-99CM,

---

[8] The question of whether a "zone of risk" theory could support a duty to prevent harm by third parties absent a special relationship between the third party and the defendant is unsettled under Florida law. Knight, 133 So. 3d at 1147–49. Florida courts recognize, however, that is possible to sustain a negligence claim based on defendant's control over the instrumentality of harm. Id. at 1146.

2017 WL 417129, at * 3–4 (M.D. Fla. Jan. 31, 2017).  In other words, it would be inappropriate to permit Mr. Leaton to use the "negligent mode of operation" theory when the Florida Legislature has disallowed it.

But even assuming Mr. Leaton can rely on evidence of negligent mode of operation to establish a general negligence theory of liability, to avoid summary judgment the evidence must show a disputed issue of material fact as to whether "the method of operation is inherently dangerous," or "the particular operation is being conducted in a negligent manner."  Schaap, 579 So. 2d at 834.  Dispensing water is not an inherently dangerous operation.  Cf. id. (holding that conducting a free cookie program for children at a grocery story was not inherently dangerous even though the defendant conceded that it could be expected that children will drop cookies on the floor).  Thus, Mr. Leaton would have to present evidence that Flik's method of serving water, i.e., by placing a self-service water dispenser on the table, was negligent.

Mr. Leaton's bare assertion that the floor was wet when he slipped and fell (as he inferred from his wet pants) does not raise a jury question on whether Flik's mode of serving water was negligent.  Holding otherwise would be akin to applying the doctrine of res ipsa loquitor.  See Glaze, 157 So. 3d at 559 (Makar, J., concurring and specially concurring).  Although actual or constructive notice is not a "required element" of a general negligence claim based on mode of operation, "it remains a basis for demonstrating—or refuting—potential negligence."  Id.; see also Vallot v. Logan's Roadhouse, Inc., 567 F. App'x 723, 726 (11th Cir. 2014) (stating that, even

under a general negligence theory, lack of actual or constructive notice is relevant in determining whether the evidence is sufficient to raise a jury question as to "the element of breach of duty").  And the record contains no evidence to show that Flik knew or should have known that the self-service water dispenser presented a risk to persons walking by the food station on Hertz's premises.  Without any additional evidence to support a finding of breach, the Court concludes that the manner in which Flik dispensed water through the water dispenser does not give rise to a triable claim of negligence.  See Publix Super Mkt., Inc. v. Sanchez, 700 So. 2d 405, 406–07 (Fla. 3d DCA 1997) (directing that judgment be entered in favor of defendant as a matter of law because a demonstration table where pieces of cake were available for customers to sample was neither inherently dangerous nor negligently maintained, even though it was not manned by a defendant's employee and even though the defendant admitted that when customers drop food that is being sampled, a hazardous condition is created), disapproved of on other grounds by Owens, 802 So. 2d at 322.

### D.    Causation

Although the Court has found that Mr. Leaton has failed to demonstrate either duty or breach (either under section 768.0755 or a general negligence theory), it nonetheless addresses causation.  To succeed on his negligence claim, whether it is based on a theory of premises liability or general negligence, Mr. Leaton must point to evidence in the record to sustain a jury finding that his slip-and-fall accident was proximately caused by Flik's breach.  See Schaap, 579 So. 2d at 834 (stating that, even under a negligent-mode-of-operation theory, the plaintiff still has

24

to prove that the condition of the floor was created "as a result of the negligent method of operation" (emphasis added)).

Negligence "may not be inferred from the mere happening of an accident alone," that is, the "mere fact that one slips and falls on a floor does not constitute evidence of negligence." Feinman v. Target Corp., No. 11-62480-CIV, 2012 WL 6061745, at *4 (S.D. Fla. Dec. 6, 2012) (internal quotation marks and citations omitted); see also Williams v. Holland, 205 So. 2d 682, 683 (Fla. 1st DCA 1968) ("[T]he right to recover in a slip and fall case requires more than a showing simply that the surface upon which the injured fell was slick, smooth or wet."). "Where the facts of a case are undisputed and the evidence ultimately leads to but one conclusion, the question of negligence becomes one of law for the trial court." Feinman, 2012 WL 6061745, at *4 (citing Stirling v. Sapp, 229 So. 2d 850, 853 (Fla. 1969)). The undisputed facts here are that Mr. Leaton fell in the hallway outside of the conference rooms at Hertz's headquarters, where Flik had set up a food self-service catering station and its employee had placed a self-service water dispenser on a table. Mr. Leaton has no idea what caused his fall, except that he felt a wet spot on his pants after the fall. Beyond this fact, there is no evidence either as to the condition of the floor or the cause of the fall.

Even if the Court were to accept that Mr. Leaton proved a duty and breach, in order to arrive at the conclusion that Flik was responsible for Mr. Leaton's injury the Court would have to infer proximate cause from the following constellation of facts: (a) the wet spot Mr. Leaton noticed on his pants after the fall came from a

spill on the floor that caused Mr. Leaton to slip; (b) the liquid spill was water as opposed to something else; (c) the water came from the self-service water dispenser; and (d) the water spilled on the floor from the water dispenser due to either a leakage directly from the dispenser or by a person who dripped or spilled water onto the floor in the process of serving themselves.  Every one of these factual findings, however, is based on nothing more than Mr. Leaton's speculation.  Put simply, there is no evidence that anyone (including Mr. Leaton) saw water spilled on the floor where Mr. Leaton fell at the time.

Mr. Leaton points to the emergency room record that he claims shows he slipped and fell on water.  (Doc. 48 at 4.)  But the medical record simply reflects what Mr. Leaton told the medical professionals about what happened to him: "[he] slipped in water and did the splits."  (Doc. 48-3.)  The person who wrote the note obviously had no personal knowledge of how Mr. Leaton was injured; in fact, the person placed quotation marks around the written explanation in the medical record to show that he or she was quoting Mr. Leaton.

Even assuming Mr. Leaton's speculation that he slipped on a liquid that caused the wet spot on his pants was true, there is no evidence that: (a) the wet spot was water, (b) the water came from the water dispenser, and (c) it made its way from the water dispenser to the floor in the manner that Mr. Leaton suggests, e.g., by someone dripping it onto the floor while filling a cup. [9]  The lack of evidence on

---

[9] See, e.g., Espinoza v. Target Corp., No. 9:19-cv-81108, 2020 WL 2813134, at *6 (S.D. Fla. May 29, 2020) (stating that the plaintiff had no idea how milk came to be on the floor, and therefore she had no personal knowledge to support an

these points renders the disputed factual questions raised by Mr. Leaton immaterial (e.g., whether Ms. Fnu placed the water dispenser at the back of the counter or at the front with the spout over the edge; whether water spilling from the dispenser was reasonably foreseeable; and whether Flik should have used a floor mat under the water spout to prevent water spills from creating a dangerous situation) immaterial.

The Court is mindful to draw inferences from the evidence in the light most favorable to Mr. Leaton and resolve all reasonable doubts in his favor.  However, only reasonable inferences may be drawn from the evidence, and "an inference is not reasonable if it is only a guess or a possibility for such an inference is not based on evidence but is pure conjecture and speculation." Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1324 (11th Cir. 1982) (internal quotation marks omitted). "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (citing Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 931–32 (7th Cir. 1995)).  Mr. Leaton's theory of how he slipped and

---

inference "that the milk originated from a product sold in the store"); Harshbarger v. Miami Herald Publ'g Co., 294 So. 2d 41, 42 (Fla. 3d DCA 1974) (per curiam) (stating "there was not a single shred of evidence to establish that the [defendant's] newspaper wire  . . . was in fact the object over which [the plaintiff] stumbled," and, even "assuming arguendo" that it was, "there was nothing in the evidence to demonstrate how the subject wire landed on the sidewalk; the duration it remained there; that its presence was the result of some action of any of the defendants; or that the newspaper wire had been on the sidewalk a sufficient length of time to charge the [defendant] with constructive notice of its existence").

fell in the hallway "is a product of too great a degree of speculation and conjecture based on the evidence in this record." Daniels, 692 F.2d at 1326.

In short, a careful analysis of the record shows that the fact that Mr. Leaton slipped in close proximity to where the water dispenser was located is the only evidence that tends to give real substance to the possibility that some negligent conduct by Flik caused Mr. Leaton to fall.  This fact alone cannot carry Mr. Leaton's case beyond the threshold of summary judgment.  See Williams v. Wal-Mart Stores, Inc., 584 F. Supp. 2d 1316, 1320 (M.D. Ala. 2008) (rejecting the plaintiff's argument that "a jury would be free to infer that the water on the . . . floor came from a cooler unit near where the incident took place," stating that "[t]his mere suggestion . . . is insufficient because there is simply no evidence supporting the theory that the cooler was indeed responsible for the water or malfunctioned in any way").

## CONCLUSION

For the foregoing reasons, Defendant Flik International Corp.'s Amended Motion for Summary Judgment (Doc. 46) is **GRANTED**.  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**ORDERED** in Fort Myers, Florida on August 11, 2021.

**JOHN L. BADALAMENTI**
UNITED STATES DISTRICT JUDGE